**UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT**

| | |
|---|---|
| PHILIP SARNER and EMILY ORBAY,<br>    *Plaintiffs*,<br><br>            v.<br><br>CRYSTAL CALDWELL-BOYD and JAMEL CALDWELL,<br>    *Defendants*. | No. 3:21-cv-987 (JAM) |

**RULING ON PARTIAL MOTIONS TO DISMISS**

No hot water. That was the complaint from two hotel guests to the front desk at the Quality Inn in Stonington, Connecticut. Maybe that was a normal kind of complaint but nothing normal happened after that—the complaint led to an argument and then one or more physical assaults. If you believe the guests, the front desk clerk started it. If you believe the desk clerk, the guests started it and then they viciously renewed it with the use of racial epithets. The police came, and the guests were later charged with assault and a hate crime.

This federal lawsuit followed. The guests have sued the desk clerk as well as her son who they say was out to retaliate against them. The desk clerk has filed counterclaims. Now both sides move to dismiss some of the claims against them. I will grant in part and deny in part their motions.

**BACKGROUND**

I start by reviewing the allegations of the complaint filed by the hotel guests before reviewing the contrasting allegations of the counterclaim complaint filed by the desk clerk. Of course, for purposes of evaluating each side's motion to dismiss, I accept as true the allegations of facts as set forth in the complaint or the counterclaim complaint for which dismissal is sought.

1

*The complaint*

The plaintiffs are Philip Sarner and Emily Orbay who were guests on June 26, 2020, at the Quality Inn in Stonington, Connecticut.[1] Sarner called the front desk to complain that they had no hot water in their room.[2] He reached the defendant Crystal Caldwell-Boyd, a front desk clerk.[3] Sarner and Caldwell-Boyd began to argue.[4] Unable to resolve the issue, Sarner went to the front desk to speak with the hotel manager.[5] Then Caldwell-Boyd appeared and began yelling and threatening Sarner, resulting in a physical altercation between Sarner, Orbay, and Caldwell-Boyd.[6] They all ended up at the hospital.[7]

The complaint further alleges that while Caldwell-Boyd was on the way to the hospital, she somehow used her hotel credentials to gain remote access to the hotel's computer system and to obtain personal information that the plaintiffs had provided when checking in to the hotel.[8] Caldwell-Boyd relayed this information to her son, the co-defendant Jamel Caldwell, who at some point earlier in the day had attempted to induce Sarner to exit the hotel in order to physically retaliate against him.[9] Caldwell allegedly used the information he received "to lie in wait for and harass the plaintiffs" in some unspecified way.[10]

The complaint further alleges that Caldwell-Boyd lied to law enforcement authorities by claiming that Sarner had "hurled racial slurs at her" and had "assaulted her because of some racial animus," and this led to a criminal charge against Sarner for "Intimidation Based on Bias

---

[1] Doc. #1 (complaint) at 2 (¶ 8).
[2] *Id.* at 3 (¶ 9).
[3] *Ibid.*
[4] *Ibid.* (¶ 10).
[5] *Ibid.*
[6] *Ibid.* (¶¶ 12–13).
[7] *Ibid.* (¶ 13).
[8] *Ibid.* (¶ 14).
[9] *Id.* at 3–4 (¶ 15).
[10] *Id.* at 4 (¶ 16).

2

or Bigotry."[11] Knowing that "she would likely be fired as a result of her conduct," Caldwell-Boyd allegedly "leveraged the ascendant Black Lives Matter 'movement' in order to paint herself as a victim and the plaintiff as a racist, white-hood wearing spawn of Bull Connor."[12]

### *The counterclaim complaint*

The counterclaim complaint filed by Caldwell-Boyd tells a mostly different story.[13] Caldwell-Boyd was working the front desk at the Quality Inn when the plaintiffs complained about the hot water service in their room.[14] But without provocation, Sarner became irate and threatened Caldwell-Boyd and then came to the front desk where he physically fought her.[15] She defended herself but suffered a swollen face and injured eye.[16]

The police were called but that did not stop both Sarner and Orbay from again attacking Caldwell-Boyd, repeatedly "pushing, shoving, punching, body slamming, kicking[,] and stomping her while she lay on the floor helplessly trying to defend herself."[17] During this second attack, Sarner and Orbay "hurled racial slurs" at Caldwell-Boyd, calling her a "monkey" and "black bitch."[18] Sarner also told her that "your life doesn't matter," in an apparent reference to the Black Lives Matter movement.[19]

---

[11] *Id.* at 12–13 (¶¶ 79–80).
[12] *Id.* at 12 (¶ 78).
[13] Doc. #22 (counterclaim complaint). Caldwell has also filed two counterclaims. Doc. #21. But because Sarner and Orbay have not moved to dismiss any of his counterclaims, I do not address Caldwell's counterclaims in this ruling.
[14] Doc. #22 at 2 (¶¶ 5–8).
[15] *Ibid.* (¶¶ 9–10).
[16] *Id.* at 3 (¶¶ 11–12).
[17] *Ibid.* (¶¶ 13–14).
[18] *Ibid.* (¶ 15).
[19] *Ibid.*

Sarner and Orbay fled from Connecticut before being arrested in New York.[20] The incident led to still-pending criminal charges against them in Connecticut state court for intimidation based on bias and assault.[21]

### *The cross-motions to dismiss*

The parties have filed cross-motions to dismiss some of the counts in the complaint and Caldwell-Boyd's counterclaim complaint.[22] Caldwell-Boyd and Caldwell move to dismiss two of the counts of the complaint: for intentional infliction of emotional distress (Count Four) and for abuse of process (Count Nine).[23] Sarner and Orbay move to dismiss four of Caldwell-Boyd's counterclaims: for "hate crime" liability under Conn. Gen. Stat. § 52-571c (Count Three), for conspiracy under 42 U.S.C. § 1985(3) to deprive Caldwell-Boyd of her right to equal protection of the law (Count Four), for vexatious litigation (Count Five), and for civil conspiracy to obstruct justice (Count Six).[24]

## DISCUSSION

When considering a motion to dismiss under Rule 12(b)(6), a court must credit as true all factual matters alleged in a complaint, although a complaint may not survive unless the facts it recites are enough to state plausible grounds for relief. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). As the Supreme Court has explained, this "plausibility" requirement "is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ibid.*

---

[20] *Ibid.* (¶ 16). The plaintiffs say they live in New York, hence conferring federal diversity jurisdiction. Doc. #1 at 2 (¶¶ 2–3).
[21] Doc. #22 at 3 (¶ 17). Connecticut has charged both Sarner and Orbay with Intimidation Based on Bias. Conn. Gen. Stat. § 53a-181j. It has also charged Sarner with both felony and misdemeanor assault, while Orbay is charged with only misdemeanor assault. Conn. Gen. Stat. §§ 53a-60 to -61; *see also* State of Connecticut Judicial Branch, Criminal / Motor Vehicle Case Look-up, *available at* https://www.jud.ct.gov/crim htm (last accessed Sept. 9, 2022).
[22] Docs. #19, #30.
[23] Doc. #19 at 3–10.
[24] Doc. #30 at 3–10.

Moreover, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to establish a plausible claim for relief. *Ibid.* A court's focus must be on whether the well-pleaded factual allegations—as distinct from conclusory statements—are enough to establish plausible grounds for relief. *Id.* at 679. This is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ibid.*; *see also Vengalattore v. Cornell Univ.*, 36 F.4th 87, 102 (2d Cir. 2022) (discussing applicable principles for review of the adequacy of a complaint).[25]

### *Intentional infliction of emotional distress*

Caldwell-Boyd and Caldwell move to dismiss Count Four of Sarner and Orbay's complaint, which alleges a claim for intentional infliction of emotional distress.[26] Under Connecticut's common law, a plaintiff claiming intentional infliction of emotional distress must show: "(1) that the [defendant] intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." *See Gleason v. Smolinski*, 319 Conn. 394, 406 n.14 (2015). "Whether a defendant's conduct is sufficient to satisfy the requirement that it be extreme and outrageous is initially a question for the court to determine" unless reasonable minds can differ in which case it is for a jury to decide. *Ibid.*

Connecticut law sets a very high bar for what constitutes extreme and outrageous conduct. The conduct must exceed all bounds usually tolerated by decent society. *Ibid.* It must be

---

[25] Unless otherwise indicated, this ruling omits internal quotation marks, alterations, citations, and footnotes in text quoted from court decisions.
[26] Doc. #19 at 6–10.

such that "the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, Outrageous!" *Ibid.* Conduct that is merely insulting, bad-mannered, or hurtful to a plaintiff's feelings is not enough to sustain a claim for intentional infliction of emotional distress. *Ibid.*

Sarner and Orbay allege that Caldwell-Boyd improperly accessed their "personal information" from the hotel computer system and then shared that information with her son, who used it to "threaten[], stalk[], and prepar[e] ambushes" against them.[27] According to Sarner and Orbay, these actions "amounted to putting out a hit on the plaintiffs, which is extreme and outrageous conduct."[28]

But these allegations are mostly conclusory. For example, the plaintiffs allege that Caldwell-Boyd accessed their "personal information" that they provided as part of the check-in process, and that "[s]he did so to facilitate [her son's] attempts to physically retaliate against the plaintiffs on her behalf."[29] But without knowing what information Caldwell-Boyd improperly obtained or how it was actually used to facilitate her son's actions, I cannot conclude that Caldwell-Boyd's alleged intrusion on Sarner and Orbay's privacy was either extreme or outrageous. *See Russo v. City of Hartford*, 184 F. Supp. 2d 169, 188 (D. Conn. 2002) (disclosure of plaintiff's confidential medical information was not extreme and outrageous).

Similarly, Sarner and Orbay repeatedly allege that "Caldwell laid in wait for the plaintiffs, followed them, harassed them on Facebook, and harassed them at their home," and that his "actions in threatening, stalking, and preparing ambushes for the purposes of trying to kill or seriously injure the plaintiffs … caus[ed] them to fear for their lives."[30] They also allege

---

[27] *See* Doc. #1 at 7–8 (¶¶ 39, 42).
[28] *Id.* at 7 (¶ 40).
[29] *Id.* at 3–4 (¶¶ 14–15).
[30] *Id.* at 6–7 (¶¶ 31, 35); *see also id.* at 4 (¶ 16) ("After having received the plaintiff[s'] personal information from

that Caldwell "had attempted to induce Sarner to exit the hotel as part of an attempt to physically retaliate against Sarner on behalf of [his mother]."[31]

But without knowing where or when Caldwell laid in wait, what he did to harass Sarner and Orbay, or how exactly he induced Sarner to exit the hotel, I cannot reasonably infer that his conduct was either extreme or outrageous. In other words, when recited to an average member of the community, Sarner and Orbay's conclusory allegations are more likely to generate puzzled looks and a litany of follow-up questions—"What do you mean he 'threatened' you? Where and when was he 'stalking' you?"—than they are to provoke an immediate response of outrage. Accordingly, because I cannot reasonably infer from the allegations that the defendants' conduct was extreme and outrageous, I will dismiss Sarner and Orbay's claim for intentional infliction of emotional distress to the extent it rests on allegations that Caldwell-Boyd improperly accessed Sarner and Orbay's personal information and that Caldwell used that information to intimidate and harass them.

Similarly, the complaint devotes a single paragraph to alleging in hyperbolic but vague terms that Caldwell-Boyd has falsely accused the plaintiffs in the media of acting for reasons of racial animus and being racists:

> Through her own statements to the media and those of her attorney, John Strafaci, Defendant Boyd has also manufactured false claims that she was the victim of racial animus and that the plaintiffs are racist thugs who hate African-Americans. She has waged a campaign of misinformation designed to destroy the plaintiffs' lives. Her efforts to further terrorize and retaliate against the plaintiffs has worked as her claims have been favorably reported by international media outlets. The Plaintiffs cannot appear in public without being confronted – sometimes violently – as racists and experience severe emotional distress every time they venture out into public.[32]

---

his mother …, Caldwell used the information he received to lie in wait for and harass the plaintiffs.").
[31] *Id.* at 3–4 (¶ 15).
[32] *Id.* at 8 (¶ 43).

But these allegations fail to identify any particular false statement that Caldwell-Boyd or her attorney made to the media, so I cannot judge whether the complaint has plausibly alleged conduct that rises to the level of being extreme and outrageous. *See Egbarin v. Hoffmann & Assocs.*, 2019 WL 1129454, at *5–7 (D. Conn. 2019) (dismissing defamation and related claim for intentional infliction of emotional distress where plaintiff failed to identify particular statements); *Croslan v. Hous. Auth. for City of New Britain*, 974 F. Supp. 161, 170–71 (D. Conn. 1997) (defamation plaintiff must allege particular statements).

Nor does the complaint identify any media outlets that reported such statements or any non-conclusory allegations about the resulting impact on the plaintiffs. Therefore, it is not possible for me to decide if the claim of severe emotional distress is plausible. Accordingly, I will dismiss without prejudice the plaintiffs' claims for intentional infliction of emotional distress.

### *Abuse of process*

Count Nine of the complaint alleges that Caldwell-Boyd engaged in abuse of process by making a false statement to the police.[33] It alleges that she falsely told the police that Sarner had assaulted her because of racial animus and that this claim led to unsupportable criminal charges.[34]

Connecticut law recognizes a claim for "abuse of process" against a person who "us[es] a legal process against another in an improper manner or to accomplish a purpose for which it was not designed." *Larobina v. McDonald*, 274 Conn. 394, 403 (2005). But such an action is often "premature" when filed prior to the termination of the underlying litigation. *See id.* at 407–08. It is premature because the eventual outcome of the underlying litigation may be relevant to the

---

[33] Doc. #1 at 12–13 (¶¶ 75–83).
[34] *Id.* at 13 (¶¶ 80–81).

8

abuse-of-process claim and because the litigation of the abuse-of-process claim while the underlying litigation is ongoing may result in duplicative litigation. *Ibid.* Thus, an abuse-of-process claim may be subject to dismissal without prejudice pending the termination of the underlying litigation. *See, e.g.*, *Pursuit Opportunity Fund I Master Ltd. v. Claridge Assocs., LLC*, 467 F. Supp. 3d 32, 36–37 (D. Conn. 2020).

All these concerns apply here. Indeed, the parties have already requested a stay of discovery pending the outcome of the underlying criminal proceedings, so it is obvious that they believe the underlying criminal proceedings will affect this action. Accordingly, I will dismiss without prejudice the plaintiffs' claim for abuse of process.

### *Hate crime liability under Conn. Gen. Stat. § 52-571c*

Count Three of Caldwell-Boyd's counterclaim complaint alleges a claim against Sarner and Orbay under § 52-571c.[35] This statute allows for a civil cause of action for damages resulting from an act that violates Conn. Gen. Stat. § 53a-181j, which is the criminal "hate crime" law that Connecticut has charged against both Sarner and Orbay.[36]

The plaintiffs argue that Caldwell-Boyd has failed to allege sufficient facts to establish a race-based motive as required under § 53a-181j.[37] But that is not so. Caldwell-Boyd alleges that while Sarner and Orbay were attacking her "they hurled racial slurs at her calling her a monkey and black bitch."[38] This specific allegation plausibly suggests that the attack on Caldwell-Boyd was motivated in whole or in substantial part by Caldwell-Boyd's race. *Cf. Umeugo v. Czajkowski*, 1999 WL 311361, at *2 (Conn. Super. Ct. 1999) (denying summary judgment as to

---

[35] Doc. #22 at 5–6.
[36] Section 53a-181j states that "[a] person is guilty of intimidation based on bigotry or bias in the first degree when such person maliciously, and with specific intent to intimidate or harass another person motivated in whole or in substantial part by the actual or perceived race … of such other person, causes physical injury to such other person or to a third person." Conn. Gen. Stat. § 53a-181j(a).
[37] Doc. #30 at 3–4.
[38] Doc. #22 at 3 (¶ 15).

9

§ 52-571c claim where plaintiffs set forth evidence that defendant used racial slurs). Accordingly, I will deny the motion to dismiss Count Three of Caldwell-Boyd's counterclaim for a violation of § 52-571c.

### *Civil rights conspiracy under 42 U.S.C. § 1985(3)*

Count Four of Caldwell-Boyd's counterclaim complaint alleges that Sarner and Orbay conspired to interfere with her civil rights in violation of § 1985(3).[39] This statute is part of the Civil Rights Act of 1871, also known as the Ku Klux Klan Act, which creates in part a civil remedy against private persons who conspire to deprive others of the equal protection of law. *See Ziglar v. Abbasi*, 137 S. Ct. 1843, 1865–66 (2017); *see generally* Ken Gormley, *Private Conspiracies and the Constitution: A Modern Vision of 42 U.S.C. Section 1985(3)*, 64 Tex. L. Rev. 527 (1985).

Section 1985(3) is worded broadly to extend to any conspiracy to deprive "any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws."[40] But the Supreme Court has construed and limited the statute to require a plaintiff to prove a conspiracy that has the following characteristics: "(1) that some racial, or perhaps otherwise class-based, invidiously discriminatory animus lay behind the conspirators' action, and (2) that the conspiracy aimed at interfering with rights that are protected against private, as well

---

[39] Doc. #22 at 6.
[40] Section 1985(3) provides, in pertinent part:

> If two or more persons in any State or Territory conspire … for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws ... [and] do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation[.]

42 U.S.C. § 1985(3).

as official, encroachment." *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 268 (1993).

As to the first of these requirements, Sarner and Orbay argue that the complaint does not allege enough facts to plausibly suggest that they were motivated by Caldwell-Boyd's race. But as discussed above, the allegations that the plaintiffs physically assaulted Caldwell-Boyd while using racial slurs are enough to plausibly suggest that Sarner and Orbay attacked Caldwell-Boyd for reasons of racial animus.

As to the second requirement, however, the Supreme Court has recognized only two federal constitutional rights for purposes of a § 1985(3) claim that are protected against private as well as government encroachment: "the Thirteenth Amendment right to be free from involuntary servitude … and, in the same Thirteenth Amendment context, the right of interstate travel." *Bray*, 506 U.S. at 278. Here, Caldwell-Boyd does not allege facts to suggest that the objective of Sarner and Orbay's conspiracy was to cast her into involuntary servitude or to obstruct her interstate travel.

Caldwell-Boyd argues instead that the objective of Sarner and Orbay's conspiracy was to violate her federal statutory right under 18 U.S.C. § 249(a)(1) to be free from a racially-motivated "hate crime" attack.[41] But § 249(a)(1) applies only to hate crime attacks involving "the use of fire, a firearm, a dangerous weapon, or an explosive or incendiary device." 18 U.S.C. § 249(a)(1). Because Caldwell-Boyd does not allege that Sarner or Orbay used any such weapon or instrumentality when they attacked her, she cannot rely on this statute as the objective of the § 1985(3) conspiracy.[42]

---

[41] Doc. #37 at 8–9.
[42] And because it is clear that federal hate-crime criminal law does not apply to Sarner and Orbay's conduct, I need not address the thornier issues of whether a criminal statute can be said to give rise to a "right" for purposes of § 1985(3). *See, e.g.*, *People of N.Y. v. Horelick*, 424 F.2d 697, 702 (2d Cir. 1970). Nor need I consider whether a §

11

Caldwell-Boyd further argues that the objective of Sarner and Orbay's conspiracy was to violate her state law right under Conn. Gen. Stat. § 53a-181j to be free from racial intimidation.[43] This argument poses the question of whether a § 1985(3) conspiracy may be premised on a denial of the equal protection of state law rather than federal law. The Second Circuit has flagged the question but declined to answer it. *See Katz v. Klehammer*, 902 F.2d 204, 208 (2d Cir. 1990); *Traggis v. St. Barbara's Greek Orthodox Church*, 851 F.2d 584, 586–90 (2d Cir. 1988).

If I were writing on a blank slate, I might conclude that a § 1985(3) conspiracy may be predicated on a conspiracy to violate state law. As noted above, the statute is written in broad terms to apply to private conspiracies to deprive persons "of the equal protection of the laws, or of equal privileges and immunities under the laws." 42 U.S.C. § 1985(3). Its reference to "the laws" does not distinguish between federal law and state law. Thus, as one commentator has suggested, "the rights at stake in section 1985(3) cases need not be the more familiar first or fourteenth amendment guarantees, or any other right found in the United States Constitution," but instead "the right at stake will normally be the equal protection of state laws—trespass laws, contract laws, property laws, and tort laws," which "sorts of rights have a life all their own, with or without state action." Gormley, *supra*, 64 Tex. L. Rev. at 587.

In my view, however, the Supreme Court rejected this position with its decision in 1993 in *Bray v. Alexandria Women's Health Clinic*, *supra*. The *Bray* case involved a § 1985(3) conspiracy claim against anti-abortion protesters who were blocking access to abortion clinics. 506 U.S. at 266. The Supreme Court ruled that the claim failed for two reasons. First, the protesters did not act for prohibited race-based or class-based reasons. *See id.* at 267–74. Second,

---

1985(3) conspiracy may have as its objective a violation of a right created by a federal statute rather than the federal constitution.
[43] Doc. #37 at 10–12.

12

the object or aim of the conspiracy was not to deprive anyone of a federal right that is protected against private encroachment. *Id.* at 274–78. The Supreme Court noted that "[t]here are few such rights" that are protected against private encroachment and that "[t]he right to abortion is not among them" because it is "obviously *not* protected against private infringement." *Id.* at 278 (emphasis in original). "Whereas, unlike the right of interstate travel, the asserted right to abortion was assuredly 'aimed at' by the petitioners, deprivation of that federal right (whatever its contours) cannot be the object of a purely private conspiracy." *Ibid.*

The conspiracy in *Bray* could have been framed in terms of a conspiracy to violate rights under state law that are protected against private encroachment. Yet the Supreme Court rejected such reliance on state law: "Trespassing upon private property is unlawful in all States, as is, in many States and localities, intentionally obstructing the entrance to private premises," but "[t]hese offenses may be prosecuted criminally under state law, and may also be the basis for state civil damages," and "[t]hey do not … give rise to a federal cause of action." *Id.* at 286. Similarly, Justice Kennedy in concurrence noted that "[t]he federal balance is a fragile one, and a false step in interpreting § 1985(3) risks making a whole catalog of ordinary state crimes a concurrent violation of a single congressional statute passed more than a century ago." *Id.* at 287 (Kennedy, J., concurring).

Put differently, if a conspiracy to violate the equal protection of state law were sufficient to support a § 1985(3) conspiracy, then there would have been no need for the Supreme Court in *Bray* even to consider and address whether the (then existing) federal constitutional right to abortion could serve as a predicate for a § 1985(3) conspiracy. Instead, the conspiracy could have been sustained simply on the fact that anti-abortion protesters aimed to violate state laws against trespass and obstructing the entrances to private premises—state laws that apply to

private actors, not just government officials. But that is not what *Bray* decided, and therefore any claim that a § 1985(3) claim may rest on a conspiracy to deprive the equal protection of state law is foreclosed by the reasoning and result of the Supreme Court's decision in *Bray*.

Although no other court to my knowledge has considered whether *Bray* forecloses a § 1985(3) plaintiff from relying on state law, many other courts have ruled that a § 1985(3) conspiracy may not be premised on a conspiracy to deprive a plaintiff of the equal protection of state law. *See Magnum v. Archdiocese of Philadelphia*, 253 F. App'x 224, 231 (3d Cir. 2007) (no § 1985(3) conspiracy to deprive plaintiff of "substantive rights created under state law designed to protect children"); *Banks v. Gates Hudson & Assocs., Inc.*, 2020 WL 3441423, at *10 (E.D. Va. 2020) (state law relating to housing dispute about resident's emotional support dog); *Aruai v. Mallozzi*, 2014 WL 3600482, at *6 (E.D. Pa. 2014) (state law libel and defamation); *Rashdan v. Geissberger*, 2011 WL 5240368, at *3 (N.D. Cal. 2011) (state law California civil rights act); *Emanuel v. Barry*, 724 F. Supp. 1096, 1102–03 (E.D.N.Y. 1989) (state law right of peoples to be "secure in their persons"); *Nieto v. United Auto Workers Local 598*, 672 F. Supp. 987, 988, 991–92 (E.D. Mich. 1987) (state law rights against assault and intentional infliction of emotional distress); *Stevens v. Tillman*, 1986 WL 15134, at *1–2 (N.D. Ill. 1986) (state law rights to practice one's profession, to be free from assault and harassment, to be free from libel and slander, and to equal protection and due process under the state constitution).

I note as well the Supreme Court's decision in *Great American Federal Savings & Loan Association v. Novotny*, 442 U.S. 366 (1979), in which it held that a § 1985(3) claim could not be predicated on a private conspiracy to violate a person's rights to be free from employment discrimination under Title VII of the Civil Rights Act of 1964. The Supreme Court reasoned that to allow such liability under § 1985(3) would allow a plaintiff to circumvent the various

procedural limitations that Title VII imposes on plaintiffs who seek relief under Title VII. *Id.* at 372–78. Although the Supreme Court in *Novotny* did not have occasion to rule on whether a conspiracy to violate state law rights could serve as the basis for a § 1985(3) conspiracy, five of the Justices agreed that a § 1985(3) conspiracy could be predicated only upon a violation of federal law. *See id.* at 379 (Powell, J., concurring) (contending that the "reach" of § 1985(3) "is limited to conspiracies to violate those fundamental rights derived from the Constitution"); *id.* at 385 (Stevens, J., concurring) (noting that "I do not believe that [§ 1985(3)] was intended to provide a remedy for the violation of statutory rights—let alone rights created by statutes that had not yet been enacted"); *id.* at 392 (White, J., dissenting and joined by Brennan, J., and Marshall, J.) (noting in part that "only conspiracies to deprive persons of federal rights are subject to redress under § 1985(3)").

In short, although Caldwell-Boyd has alleged facts to show racial animus, she has not alleged that the object of the conspiracy was to deprive her of a right that is protected against private encroachment and that is a federal right that qualifies as a basis for liability under § 1985(3). Accordingly, I will dismiss without prejudice Count Four of Caldwell-Boyd's counterclaim for a violation of 42 U.S.C. § 1985(3).

### *Vexatious litigation*

Caldwell-Boyd alleges in Count Five of her counterclaim complaint that by filing their complaint Sarner and Orbay have violated Connecticut's statutory law against vexatious litigation.[44] The vexatious litigation statute provides that "[a]ny person who commences and prosecutes any civil action or complaint against another, in his own name or the name of others, or asserts a defense to any civil action or complaint commenced and prosecuted by another (1)

---

[44] Doc. #22 at 7.

without probable cause, shall pay such other person double damages, or (2) without probable cause, and with a malicious intent unjustly to vex and trouble such other person, shall pay him treble damages." Conn. Gen. Stat. § 52-568.

It is well established that a vexatious litigation claim is subject to dismissal absent an allegation that the underlying litigation that is claimed to be vexatious has fully terminated in the claimant's favor. *See Scalise v. East Greyrock, LLC*, 148 Conn. App. 176, 181–82 (2014); *see also Rodowicz v. Feldman, Perlstein & Greene, LLC*, 2021 WL 3290706, at *7 (D. Conn. 2021) (dismissing vexatious litigation claim as not ripe). Because Sarner and Orbay's complaint remains pending, Caldwell-Boyd has not satisfied this requirement. Accordingly, I will dismiss without prejudice Count Five of Caldwell-Boyd's counterclaim complaint.

### *Civil conspiracy*

Caldwell-Boyd alleges in Count Six of her counterclaim complaint that Sarner and Orbay have engaged in a "civil conspiracy to obstruct justice." Under Connecticut law, "[t]he elements of a civil action for conspiracy are: (1) a combination between two or more persons, (2) to do a criminal or an unlawful act or a lawful act by criminal or unlawful means, (3) an act done by one or more of the conspirators pursuant to the scheme and in furtherance of the object, (4) which act results in damage to the plaintiff." *Harp v. King*, 266 Conn. 747, 779 (2003). As the Connecticut Supreme Court has recognized, there is "no independent claim of civil conspiracy," but instead "the action is for damages caused by acts committed pursuant to a formed conspiracy rather than by the conspiracy itself." *Macomber v. Travelers Prop. & Cas. Corp.*, 277 Conn. 617, 636 (2006). "Thus, to state a cause of action, a claim of civil conspiracy must be joined with an allegation of a substantive tort." *Ibid.*

The problem for Caldwell-Boyd is that she has not alleged a valid substantive tort that underlies her civil conspiracy claim. She alleges that Sarner and Orbay "conspired to falsely accuse [her] of accessing their personal information and using it to harass, lie in wait, or otherwise extract revenge against them" and that Sarner and Orbay "falsely accused [her] in order to obstruct justice and provide a defense for themselves in the state court criminal proceedings."[45] Thus, the substantive tort she alleges is Sarner and Orbay's vexatious filing and litigation of this federal lawsuit with its false accusations of wrongdoing. Indeed, Caldwell-Boyd admits as much when she argues in her briefing that Sarner and Orbay "acted, *in filing this suit*, in a manner that potentially violates [Connecticut criminal law]."[46]

But, as noted above, Caldwell-Boyd cannot plead the tort of vexatious litigation because the underlying lawsuit has yet to resolve in her favor. Therefore, she has failed to allege a valid substantive tort as required to sustain her civil conspiracy claim. *See Byrne v. Burke*, 112 Conn. App. 262, 277–78 (2009) (affirming dismissal of civil conspiracy claim in light of dismissal of parallel vexatious litigation claim where the two claims rested on the same facts); *see also Collins v. Alonso, Andalkar & Facher, P.C.*, 2021 WL 4477289, at *9 (D. Conn. 2021) (no civil conspiracy where plaintiffs "have not alleged a cognizable or actionable tort of vexatious litigation to support their civil conspiracy claim"). Accordingly, I will dismiss without prejudice Count Six of Caldwell-Boyd's counterclaim complaint.

---

[45] Doc. #22 at 7 (¶¶ 19–20) (Count Six).
[46] Doc. #37 at 14 (emphasis added). Caldwell-Boyd and Caldwell further allege that Sarner and Orbay "acted to intimidate [them both] from testifying truthfully in the state court criminal action." Docs. #22 at 8 (¶ 22), #21 at 8 (¶ 25). But they do not allege any such acts of intimidation apart from their filing of this federal court action against them.

## CONCLUSION

For the reasons set forth above, the Court GRANTS without prejudice the defendants' motion to dismiss Count Four (intentional infliction of emotional distress) and Count Nine (abuse of process) of the complaint. The Court DENIES the plaintiffs' motion to dismiss Count Three (Conn. Gen. Stat. § 52-571c) but GRANTS without prejudice the plaintiffs' motion to dismiss Count Four (§ 1985(3) conspiracy), Count Five (vexatious litigation), and Count Six (civil conspiracy) of the counterclaim complaint of defendant Caldwell-Boyd.

It is so ordered.

Dated at New Haven this 12th day of September 2022.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge